O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARISSA BOISVERT,<br><br>               Plaintiff,<br><br>    v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>               Defendant. | Case No.:  8:24-cv-01570-MEMF-JDE<br><br>**ORDER DENYING MOTION TO COMPEL ARBITRATION [ECF NO. 21]** |

    Before the Court is a Motion to Compel Arbitration filed by Defendant Experian Information Solutions, Inc. ECF No. 21. For the reasons stated herein, the Court hereby **DENIES** the Motion to Compel Arbitration.

/ / /

/ / /

/ / /

1

I. **Background**

A. Factual Background[1]

Plaintiff Carissa Boisvert ("Boisvert" or "Plaintiff") resides in Stratham, New Hampshire. 1AC ¶ 36. Defendant Experian Information Solutions, Inc. ("EIS" or "Defendant") is a "consumer reporting agency," as statutorily defined at 15 U.S.C. § 1681a(f). Its principal place of business is located in Costa Mesa, California. *Id.* ¶ 37. EIS receives, evaluates, and assembles consumer information for the purposes of furnishing "consumer reports" as defined at 15 U.S.C. § 1681a(d). *See id.* ¶¶ 37–38.

EIS engaged in "mixed" or "merged" credit filing, which occurs when its algorithms wrongly match information belonging to one consumer to the credit file of another consumer. *Id.* ¶ 62. In or around October 2023, Boisvert obtained a copy of her EIS credit file and discovered several pieces of incorrect information, including accounts that did not belong to her. *Id.* ¶¶ 78–79. In or around November 2023, Boisvert disputed the errors directly with EIS. *Id.* ¶ 84. EIS informed Boisvert that it had verified all accounts as accurate. *Id.* ¶ 98. Boisvert's credit score declined precipitously due to erroneously combined accounts in the credit report produced by Defendant and Defendant's inaction in response. *Id.* ¶ 99, 102.

B. The Arbitration Agreement[2]

CreditWorks is a credit monitoring product offered to customers by ConsumerInfo.com ("CIC"). *See* ECF No. 21-1 ("Motion" or "Mot") at 3. CIC is EIS's affiliate and does business as Experian Consumer Services ("ECS"). *Id.*

EIS asserts that Boisvert enrolled in a CreditWorks account in November 2021. *Id.* at 4.[3] At that time, users were required to complete a webform in order to enroll in the program. ECF No. 21-2 ¶ 3. The webform required users to enter their personal information before clicking the "Create Your Account" button to enroll. *Id.* Immediately below the box to enter an email address and

---

[1] Unless otherwise indicated, the following factual background is derived from the allegations in Plaintiff Carissa Boisvert's First Amended Complaint, *see generally* ECF No. 10 ("1AC"), and from argument and evidence submitted by EIS that Boisvert does not dispute.
[2] This section is derived from argument and evidence submitted by EIS that Boisvert does not dispute.
[3] The Court makes no findings as to whether Boisvert did, in fact, enroll in a CreditWorks account in November 2021.

password, the following disclosure was made: "By clicking 'Create Your Account': I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy." *Id.* The phrase "Terms of Use Agreement" was off-set in blue font, indicating that it was a clickable hyperlink. *Id.* ¶ 4. If a user clicked on the words "Terms of Use Agreement," she would have been presented with the full text of the agreement. *Id.*

The Terms of Use Agreement[4] included a twelve-paragraph section titled "DISPUTE RESOLUTION BY BINDING ARBITRATION." *See id.* Ex. 2. In a summary paragraph at the top of this section, the agreement stated:

> IN THE UNLIKELY EVENT THAT ECS'S CUSTOMER CARE DEPARTMENT IS UNABLE TO RESOLVE A COMPLAINT YOU MAY HAVE REGARDING A SERVICE OR WEBSITE TO YOUR SATISFACTION (OR IF ECS HAS NOT BEEN ABLE TO RESOLVE A DISPUTE IT HAS WITH YOU AFTER ATTEMPTING TO DO SO INFORMALLY), WE EACH AGREE TO RESOLVE THOSE DISPUTES THROUGH BINDING ARBITRATION OR SMALL CLAIMS COURT INSTEAD OF IN COURTS OF GENERAL JURISDICTION TO THE FULLEST EXTENT PERMITTED BY LAW.

*Id.* Below this paragraph, in the following section, the agreement stated:

> ECS and you agree to arbitrate all disputes and claims between us arising out of this Agreement directly related to the Services or Websites to the maximum extent permitted by law, except any disputes or claims which under governing law are not subject to arbitration. This agreement to arbitrate is intended to be broadly interpreted and to make all disputes and claims between us directly relating to the provision of any Service and/or your use of any Website subject to arbitration to the fullest extent permitted by law. The agreement to arbitrate includes, but is not limited to: claims arising out of or relating to any aspect of the relationship between us arising out of any Service or Website . . . .

*Id.* It further stated: "For purposes of this arbitration provision, references to 'ECS,' 'you,' and 'us' shall include our respective parent entities, subsidiaries, affiliates (including, without limitation, our service provider, CSID), [etc.]." *Id.*

The agreement also included the following language:

> All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision as well as the Agreement's other terms and conditions, and the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement . . . .

---

[4] The Terms of Use Agreement language is taken from the version of the agreement that was operative at the time Boisvert allegedly enrolled in CreditWorks. *See* ECF No. 21-2 ¶ 5.

*Id.*

## C. Procedural History

On July 23, 2024, Boisvert filed her 1AC. *See generally* 1AC. The 1AC states five causes of action against Defendant: (1) failure to follow reasonable procedures to assure maximum possible accuracy, in violation of the federal Fair Credit Reporting Act ("FCRA"), (2) failure to follow reasonable procedures to assure maximum possible accuracy, in violation of the California Consumer Credit Reporting Agencies Act ("CCRAA"), (3) failure to perform a reasonable reinvestigation, in violation of the FCRA, (4) failure to reasonably reinvestigate plaintiff's dispute, in violation of the CCRAA, and (5) negligence. *Id.* ¶¶ 129–70.

On January 6, 2025, EIS filed the instant Motion to Compel Arbitration. *See* Mot. On January 23, 2025, Boisvert filed her opposition. ECF No. 26 ("Opposition" or "Opp'n").[5] On January 29, 2025, EIS filed a reply. ECF No. 27 ("Reply"). On April 14, 2025, EIS filed a Motion for Protective Order for the Stay of Discovery and Scheduling Order Deadlines pending resolution of the Motion, ECF No. 36, which was granted on May 1, 2025, ECF No. 37.

## II. Applicable Law

Under Section 2 of the Federal Arbitration Act ("FAA"), arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[6] The FAA reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)).

In determining whether to compel arbitration, the court must consider two gateway factors: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). The party moving to compel arbitration bears

---

[5] The Court notes that the Opposition was not filed in compliance with the Court's Civil Standing Order, which requires that an Opposition be filed no later than fourteen (14) days after the filing of the initial Motion. Civil Standing Order § VII(B). The Court in its discretion will consider the Opposition, but future pleadings may be stricken if not filed in full compliance with the Court's Standing Order.

[6] The parties do not dispute the applicability of the FAA to the CBA at hand.

the "burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

The Ninth Circuit has explained that if a district court is "satisfied that the making of the agreement for arbitration [] is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Hansen v. LMB Mortgage Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). However, if a court determines that there is a factual dispute as to the whether the parties formed an agreement, a court must resolve such a dispute under the summary judgment standard before resolving a motion to compel arbitration. *Knapke v. PeopleConnect, Inc.*, 38 F.4th 824, 831 (9th Cir. 2022). "The summary judgment standard is appropriate because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate." *Hansen*, 1 F.4th at 670.

### III. Discussion

The Court finds that EIS has not met its burden of demonstrating that an agreement to arbitrate exists.[7] Thus, the Court denies the Motion without prejudice.

#### A. Smith's Declaration is Admissible Evidence.

As a preliminary matter, the Court must determine whether the declaration by Dan Smith ("Smith") that EIS offers in support of the Motion is admissible.

As previously stated, when considering a motion to compel arbitration, the district court must apply the summary judgment standard set forth in Federal Rule of Civil Procedure 56. *Knapke*, 38 F.4th at 831; *Hansen*, 1 F.4th at 670.

Under Rule 56(c)(4) "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." "Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. Personal knowledge

---

[7] EIS asserts that it a party to the arbitration agreement or, at a minimum, a third-party beneficiary entitled to enforce the agreement. *See* Mot at 8–12. Plaintiff does not contest EIS's status as a party to the arbitration agreement. *See generally* Opp'n. As such, the Court does not address this issue.

may also be "inferred from a declarant's position." *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000). And personal knowledge required under Rule 56(c)(a) may come from the review of pertinent files and records. *N.H. Ins. Co. v. Blaze Const. Inc.*, 28 F.3d 107, at *1 (9th Cir. 1994) (citations omitted); *Laurant Beverly Hills v. Ford Motor Co.*, 108 F.3d 338, at *3 (9th Cir. 1996) (citations omitted). In general, "the requirement of personal knowledge imposes only a minimal burden on a witness." *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (internal quotation marks omitted).

Boisvert contends that Smith's declaration is deficient under Rule 56(c)(4) because the assertions he makes are speculative and unsupported by any tangible evidence. *See* Opp'n at 9–21. She further argues that Smith was not present when Boisvert allegedly agreed to the Terms of Use Agreement. *Id.* at 19–20. The Court finds these arguments unavailing.

Smith's job title and duties are sufficient to establish personal knowledge of the steps that users must take and the webforms they encounter when signing up for a CreditWorks account. Smith is the Director of Product Operations for CIC. ECF No. 21-2 ¶ 1.[8] He has been employed by CIC since January 2010, and his duties include supporting the consumer enrollment process into CreditWorks and related services. *Id.* These duties require Smith to be familiar with how consumers enroll, the forms that consumers are required to complete in order to enroll, and the terms of use governing such services. *Id.* As part of his role, he must also be familiar with ECS's electronic databases that contain consumer enrollment information, the personal identifiable information required for enrolling, the buttons that consumers must select during the enrollment process, and the date and time of a consumer's acceptance of the Terms of Use Agreement. *Id.* Smith further testified that he is familiar with ECS's records that indicate the time its consumers log into their respective accounts. *Id.* The Court finds that these statements sufficiently demonstrate Smith's personal knowledge regarding the CreditWorks enrollment process and Boisvert's enrollment in the service.

Boisvert's arguments that Smith did not reference any documents that support his testimony concerning her personal interactions with the CreditWorks webform and the contents of the

---

[8] As previously stated, CIC is an affiliate of EIS and does business as ECS. *See supra* Section I.B.

6

associated hyperlinks mischaracterize Smith's statements. Smith's declaration clarifies, with adequate specificity, that he personally reviewed "pertinent data and documents maintained as business records by ECS in the course and scope of ECS's business, including ECS's internal records that store CreditWorks account information." ECF No. 21-2 ¶ 1. Equally important, he explained that he reviewed "CIC's membership enrollment data," including "data specific to [Boisevert's] membership, on November 26, 2021." *Id.* ¶ 3.

Boisvert also claims that Smith's declaration does not cite or include as evidence "any internal records establishing the IP address of the device allegedly used on November 26, 2021, demonstrating an audit or activity log for that IP address, or any other record which in any way could prove to a reasonable jury that Plaintiff did, in fact, view and agree to the agreement Experian seeks to enforce here." Opp'n at 13. This argument imposes a greater burden for personal knowledge than what is actually required. As previously stated, personal knowledge may be derived from the review of pertinent files and records, which is exactly what Smith did. *N.H. Ins. Co.*, 28 F.3d 107, at *1; *Laurant Beverly Hill*, 108 F.3d, at *3.

Boisvert's argument that Smith lacks personal knowledge because he did not witness her enrollment in CreditWorks on November 26, 2021 is similarly unavailing. Opp'n at 14. Again, this argument imposes a greater burden for personal knowledge than what is required. Finally, her assertion that Smith cannot establish personal knowledge based on the ambiguous claim that he gained the personal knowledge "in the course and scope of [his] job responsibilities and through the review of documents," Opp'n at 13, overlooks the specificity with which Smith described his job title, and duties at ECS. ECF No. 21-2 ¶ 1.

Boisvert relies on *Austin v. Equifax Info. Servs., LLC*, No. 3:22CV707, 2023 WL 8646275 (E.D. Va. Dec. 14, 2023) to argue that Smith's declaration is not grounded in personal knowledge. Opp'n at 15–17. That case is neither controlling nor persuasive. The declarant in *Austin* only stated that he was "familiar with, among other things, the marketing, advertising and sales of CIC consumer credit products, including services that consumer[s] enroll in at Experian websites, as well as the Terms of Use governing such services." 2023 WL 8646275, at *2. The court reasoned that the declarant's job description "was too ambiguous to present a finding that [he] had personal

knowledge of the averments in [his] Affidavit . . . . In other words, [his] actual job description in CIC did not permit a finding that he had personal knowledge of the Credit[W]orks sign-on process." *Id.* Here, Smith has provided a far more comprehensive account of his title, job description, professional responsibilities, and familiarity with the enrollment process. ECF No. 21-2 ¶¶ 1–3.

The Court also finds the instant case distinguishable from *Lamonaco v. Experian Info. Sols., Inc.*, No. 6:23-CV-1326-PGB-LHP, 2024 WL 1703112 (M.D. Fla. Apr. 19, 2024), a separate nonbinding case on which Boisvert relies. That case concerned a clickwrap agreement and the declaration of the same declarant at issue in *Austin*. 2024 WL 1703112 at *4–5. The court concluded that the declarant "lacks personal knowledge that Lamonaco herself completed the enrollment process for CreditCheck Total at all." *Id.* The court based its conclusion on the declarant's own admission that he lacked personal knowledge on whether the plaintiff completed the enrollment process for CreditCheck Total. *Id.* The court also underscored that the declarant did not describe the account data that CIC keeps and was available to the declarant to review that would prove that the plaintiff accessed the website. *Id.* Here, by contrast, Smith testified to his personal knowledge that Boisvert enrolled in the CreditWorks account and specified the account data that he reviewed to support his knowledge—namely, "the personally identifiable information entered when enrolling, which buttons the consumer would have clicked on in the enrollment process, and date and time of the consumer's acceptance of the Terms of Use." ECF No. 21-2 ¶ 1.

In addition, the Court finds *Newton v. Experian Info. Sols., Inc.*, No. CV-623-059, 2024 WL 3451895 (S.D. Ga. July 18, 2024), a third nonbinding case that Plaintiff points to, unpersuasive and distinguishable. In that case, the court granted in part the plaintiff's motion to exclude the declaration of Smith, the same declarant at issue in the instant case. *Id.* at *4. In particular, the court concluded that Smith's declaration was insufficient to establish personal knowledge of the plaintiff's assent to the agreement. *Id.* Unlike the declaration here, Smith's declaration in *Newton* only asserted that he is "able to retrieve a consumer's CreditWorks membership information upon a receipt of that consumer's personally identifiable information." *Id.* at *3. Here, Smith asserts that he personally retrieved Boisvert's CreditWorks information from ECS's databases. ECF No. 21-2 ¶ 1. Using her

CreditWorks information, Smith confirmed Boisvert's membership details, including the Terms of Use that she agreed to. *Id.*

Accordingly, the Court finds that Smith's declaration sufficiently establishes that he has personal knowledge of the CreditWorks enrollment process and Boisvert's enrollment.

### B. The Existence of an Agreement to Arbitrate is Disputed.

The Court next considers the initial gateway factor: whether genuine disputes of material fact exist as to whether Boisvert and EIS entered into an agreement to arbitrate. *Brennan*, 796 F.3d at 1130. To evaluate whether the parties entered into a valid agreement to arbitrate, "federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Cir. City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks omitted). "In keeping with California's strong public policy in favor of arbitration, any doubts regarding the validity of the arbitration agreement are resolved in favor of arbitration." *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1144 (2012). Despite this strong policy in its favor, ultimately "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Howsam*, 537 U.S. at 83 (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). "[A]s with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). As previously stated, when resolving a motion to compel arbitration "the summary judgement standard [of Rule 56] is appropriate. *Hansen*, 1 F.4th at 670. To that end, the Court must view evidence in the light most favorable to the nonmoving party and consider whether there is a genuine dispute of material fact. Fed. R. Civ. P. 56.

Smith's declaration states: "Based upon my review of CIC's membership enrollment data maintained in the regular course of business, including data specific to Plaintiff's membership, on November 26, 2021, Plaintiff enrolled in CreditWorks." ECF No. 21-2 ¶ 3. In her own declaration, Boisvert attests she has "no recollection of signing up for any account with Experian," and "[u]ntil the filing of this lawsuit, [she] was not aware of Experian's claim that [she] signed up for free credit monitoring at www.experian.com and waived [her] right to a jury trial." ECF No. 26-2 ¶¶ 2–3. Boisvert also asserts she does "not recall entering into any type of arbitration agreement with

Experian," and she has "never heard of CreditWorks and do[es] not know what CreditWorks is." ECF No. 26-2 ¶ 5–6.

The Complaint does not allege that Boisvert created an account with EIS or CreditWorks. Rather, the Complaint alleges that Boisvert "requested a copy of her credit file from Defendant," "disputed the [credit report] inaccuracies directly with Defendant," and "requested that Defendant reinvestigate the disputed information, correct the reporting, and send her a correct copy of her credit report." 1AC ¶¶ 77, 84–85. In fact, no reference is made to CreditWorks whatsoever in the 1AC. And Smith's declaration does not assert that Boisvert would be unable to obtain a credit report from Experian without enrolling in a CreditWorks account. Although Smith's declaration asserts that "all CreditWorks subscribers are required to provide written authorization under the FCRA to obtain their credit report and/or score(s) on a recurring basis from EIS through CreditWorks," ECF No. 21-2 ¶ 8, but Boisvert does not allege that she received credit reports on a recurring basis.

EIS asserts that Boisvert's lack of recollection does not create an issue of material fact concerning contract formation. Reply at 1. Yet the nonbinding authority that EIS cites as examples where other courts have compelled arbitration based upon terms of use agreements did *not* involve plaintiffs who disputed signing up for accounts with companies like CreditWorks. *Id.* at 1–2; *see, e.g.*, *Scribner v. Trans Union LLC*, 738 F. Supp. 3d 1301, 1305 (E.D. Cal. 2024) ("Plaintiff admits he obtained a credit report from Experian and successfully created a CreditWorks account."); *Meeks v. Experian Info. Servs., Inc.*, No. 21-17023, 2022 WL 17958634, at *1 (9th Cir. Dec. 27, 2022) (describing that the plaintiffs "signed up for credit-monitoring services provided primarily by Experian's sister company, [ECS]"); *Zaimi v. Neiman Marcus Grp., LLC*, No. 2:22-CV-02972 AB (SKx, 2022 WL 19569536, at *1 (C.D. Cal. Aug. 31, 2022) (complaint alleged that the "[p]laintiff created an account on [d]efendant's website, which she used to make purchases"); *Grice v. Uber Techs., Inc.*, No. CV 18-2995 PSG (GJSx), 2020 WL 497487, at *1 (C.D. Cal. Jan. 7, 2020) (where the plaintiff's declaration acknowledged that "[p]laintiff used the Uber App as both a Rider and a Driver"). Rather, those cases concerned plaintiffs who stated that they did not recall or did not see the provisions of the arbitration agreement *after* they created their account.

Here, Boisvert's declaration states (1) she had no recollection of signing up for an account with EIS, (2) she was not aware of EIS's claim that she signed up for credit monitoring and waived her right to a jury trial, (3) she was not aware of EIS's claim that she signed up for credit monitoring and agreed to arbitrate any claims against EIS, (4) she has no recollection of entering into an arbitration agreement with EIS, and (5) she had never heard of CreditWorks and does not know what CreditWorks is. ECF No. 26-2 ¶¶ 2–6. And EIS has not proffered any evidence that Boisvert would have been required to create an account with CreditWorks to undertake the conduct she alleges in the 1AC, such as securing an EIS credit report and disputing credit score inaccuracies with EIS. This raises a triable issue of fact that prevents EIS from compelling arbitration at this stage.

Accordingly, drawing all inferences in Boisvert's favor, the Court concludes that based upon the record, Boisvert has established a genuine issue of material fact as to whether she enrolled in CreditWorks and thus encountered the webform outlined in Smith's declaration. As such, the Court is unable to resolve the Motion at this stage of the proceedings. *Knapke*, 38 F.4th at 831 ("[A] court is not authorized to dispose of a motion to compel arbitration until after [material] factual disputes have been resolved.") (second alteration in original) (quoting *Hansen*, 1 F.4th at 671).[9]

### C. Limited Discovery Regarding Contract Formation is Warranted.

Boisvert requests that this Court deny the Motion with prejudice, but in the alternative requests that it be denied without prejudice with an accompanying instruction to the parties to conduct discovery into contract formation. Opp'n at 21 n.8. She asserts that limited discovery is necessary in light of "Experian's blanket refusal thus far to produce any documentary evidence supportive of its assertions regarding contract formation." *Id*. EIS appears to agree that limited discovery is proper where there is a dispute as to contract formation, but argues that ordering discovery here is improper because, in its view, there is no dispute as to contract formation. *See* Reply at 12.

---

[9] As the Court finds that there is a genuine issue of material fact concerning whether Plaintiff enrolled in a CreditWorks account, the Court does not make any findings with regard to the parties' remaining disputes, including whether the Terms of Use Agreement constitutes an enforceable arbitration agreement between the parties under California law.

      The FAA permits the Court to order limited discovery to resolve whether a contract exists "only if 'the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue.'" *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999) (quoting 9 U.S.C. § 4).

      As discussed above, the Court has found that there is a dispute as to contract formation. Accordingly, limited discovery is appropriate. *Id.* Accordingly, the Court will permit a limited 90-day period for discovery into contract formation, after which EIS may re-file its motion to compel arbitration.

## IV. Conclusion

For the foregoing reasons, the Court ORDERS as follows:

1. The Court DENIES the Motion to Compel Arbitration WITHOUT PREJUDICE.
2. The parties are permitted to conduct limited discovery into the issue of contract formation issue.
3. The cut-off date for this limited discovery period shall be ninety (90) days from the date of this Order.
4. The parties are advised that this discovery cut-off date is the last day by which all depositions must be completed, responses to previously served written discovery must be provided, and motions concerning discovery disputes must be heard, not filed. In other words, any motion challenging the adequacy of discovery responses must be filed timely, served, and calendared sufficiently in advance of the relevant discovery cut-off date to permit the responses to be obtained before that date, if the motion is granted.
5. Following the limited discovery period, EIS may file a renewed motion to compel arbitration after complying with Local Rule 7-3. Any renewed motion to compel must be filed within 30 days of the limited discovery cut-off.

IT IS SO ORDERED.

Dated: August 20, 2025

                                            MAAME EWUSI-MENSAH FRIMPONG
                                                  United States District Judge